IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

**DALE P. FIELD, JR.,**

       **Plaintiff,**

v.                                          **Civil Action No. 1:21-CV-00218**

**PHILLIP MORRIS, USA, INC.,**

       **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court are ***Defendant Philip Morris USA Inc.'s Motion to Dismiss Plaintiff's Amended Complaint*** and ***Philip Morris USA Inc.'s Memorandum in Support of its Motion to Dismiss Plaintiff's Amended Complaint*** (ECF Nos. 23, 24) filed on June 25, 2021.[1] By Administrative Order entered on April 12, 2021, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 3) Having examined the Amended Complaint and pleadings of record, and having considered the pertinent legal authority, the undersigned has concluded that the ***Motion to Dismiss*** should be **GRANTED** for the reasons stated *infra*:

---

[1] Earlier in these proceedings, on April 16, 2021, Defendant filed its initial Motion to Dismiss and supporting Memorandum (ECF Nos. 5, 6), to which Plaintiff filed a response that the undersigned construed as a motion for leave to amend his complaint (ECF Nos. 11, 12). Accordingly, for purposes in this Proposed Findings and Recommendation, the undersigned focuses on Plaintiff's Amended Complaint and Defendant's Motion to Dismiss same in the spirit of simplicity and judicial economy; additionally, Plaintiff was specifically notified that his Amended Complaint would supersede his original Complaint (ECF No. 12).

**Plaintiff's Factual Allegations**

Plaintiff filed a multi-count complaint against Defendant:[2]

For his first claim or count, Plaintiff alleges Defendant was negligent by failing to provide adequate information concerning the additives in its products, which caused "an unnatural and increased addiction" to its products, including Marlboro cigarettes, which Plaintiff has used. (ECF No. 20 at 2) Plaintiff alleges that he suffered from physical, mental, and financial harm as a result of Defendant's negligence because his prolonged use of Defendant's products affected his breathing which prevented him from passing a breathing test in order to pursue opportunities in commercial SCUBA diving. (Id.) Plaintiff alleges that his physician indicated Plaintiff's breathing issues were directly attributed to his use of Defendant's products. (Id.) Plaintiff also alleges that Defendant's use of "hidden additives created an additional hardship financially in that the increasing prices on tobacco products rob the standard individual who is unable to break away from the increased addictiveness of these additives." (Id.)

For the second count, Plaintiff alleges that Defendant's products are not reasonably safe and are defectively designed – that the additives, unknown to the consumer, causing an increased need or addiction for the products, and in turn spends more money on these products, which further contribute to bodily harm. (Id. at 3)

For the third count, Plaintiff further alleges that Defendant failed to warn consumers of the hidden additives used in its products "that would act against an individual's free will, and create

---

[2] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. See Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

an exhilarated addictiveness beyond that which is nature and normal, the consumer would have had the opportunity to choose an alternative course of action." (Id. at 4)

For the fourth count, Plaintiff alleges that Defendant breached express warranty by failing to provide a warning and identify certain ingredients on the packaging of its products, harming Plaintiff. (Id.) For the fifth count, Plaintiff alleges Defendant breached implied warranty by implying only tobacco is the only addictive ingredient in its products by failing to include additives that increase the addictive properties of same, causing harm to Plaintiff. (Id. at 4-5)

For the sixth count, Plaintiff alleges that Defendant knowingly misrepresented and concealed information concerning the harmful additives in its products. (Id. at 5)

Finally, for the seventh count, Plaintiff alleges Defendant committed a "moral wrong" because Plaintiff understandably relied upon the limited information provided on Defendant's packaging, and being unaware of the harmful additives, he was harmed. (Id.) Plaintiff asserts that Defendant "deliberately made the product in a way to mislead the Plaintiff for the sole purpose of profit . . . with total disregard to the health and safety of the public." (Id.)

Plaintiff seeks $2 million and $50,000 in punitive damages, plus interest, court costs, filing fees, attorney fees, and any additional fees this Court deems proper. (Id. at 5-6)

**Procedural History**

On April 12, 2021, Defendant filed its Notice of Removal and Request for Jury Trial (ECF No. 1) following receipt of Plaintiff's complaint in the Circuit Court of McDowell County, West Virginia. Subsequently, on April 16, 2021, Defendant filed its initial Motion to Dismiss and

supporting Memorandum (ECF Nos. 5, 6). In accordance with the Roseboro notice[3] issued by the undersigned (ECF No. 7), after requesting additional time to file a response, Plaintiff filed his Response in opposition to Defendant's Motion to Dismiss on May 17, 2021 (ECF No. 11).[4]

Having construed Plaintiff's Response as a motion for leave to amend his Complaint, the undersigned entered an Order granting same and directed Plaintiff to file his amended complaint by June 1, 2021 (ECF No. 12). On May 19, 2021, Plaintiff filed a "Motion Requesting Court Recognize [*sic*] Mailbox Rule" (ECF No. 13).[5] On June 1, 2021, Plaintiff filed a motion requesting additional time to file his amended complaint (ECF No. 15), which the undersigned granted, allowing Plaintiff until July 1, 2021 to file same (ECF No. 16).

On June 7, 2021, Plaintiff filed his "Motion to Remand Back to the State Circuit Court" (ECF No. 18). On June 11, 2021, Plaintiff filed his Amended Complaint and Demand for Jury Trial as well as a "Request for Waiver of Service" to Defendant (ECF Nos. 20, 21).[6]

On June 21, 2021, Defendant filed its "Opposition to Plaintiff's Motion to Remand Back

---

[3] Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

[4] Plaintiff also contemporaneously filed a "Motion for Leave to Proceed In Forma Pauperis" (ECF No. 10) which the undersigned denied as moot because Defendant had paid the filing fee upon removal of this action (ECF No. 12). Nevertheless, on June 7, 2021, Plaintiff filed his Objections to the undersigned's Order, mistakenly asserting that the Court denied his application to proceed in forma pauperis because "Plaintiff paid the initial filing fee" and requested the Court to vacate its previous order and to recognize his "in forma pauperis status" (ECF No. 17).

[5] At that time, Plaintiff was incarcerated at McDowell County Correctional Center and asked the Court to recognize his response was filed on May 13, 2021 as having been placed in the institution's outgoing mail. Because the undersigned finds and recommends that Defendant's Motion to Dismiss be granted, the undersigned **DENIES** Plaintiff's Motion requesting this Court to recognize the Mailbox Rule as **MOOT** (ECF No. 13).

[6] Plaintiff also filed on June 11, 2021 a "Renewal of Motion to be Recognized as Indigent to Proceed Informa Pauperis" (ECF No. 19), again asserting that the Circuit Court of McDowell County granted him leave to proceed in forma pauperis and that he "DID NOT pay a filing fee in this matter" and wants to be recognized as indigent. Having already determined that because Defendant paid the filing fee upon removing this action to this Court, the undersigned, once again, for the reasons set forth in the previous Order (ECF No. 12), **DENIES** Plaintiff's "Renewal Motion" as **MOOT** (ECF No. 19).

to State Court" (ECF No. 22).

On June 25, 2021, Defendant filed its Motion to Dismiss and supporting memorandum (ECF Nos. 23, 24); following the Court's entry of another Roseboro notice to respond to Defendant's Motion by July 12, 2021 (ECF No. 26), Plaintiff filed his "Objections to Order" on July 12, 2021, complaining that he did not receive Defendant's Motion and requested additional time in order to respond (ECF No. 27). Recognizing that Plaintiff had been moved to another institution pursuant to a "Notice of Change of Address and/or Contact Information for Pro Se Litigants" (ECF No. 23) that was docketed on the same day as Defendant's Motion and Memorandum, the Court ordered the Clerk to mail copies of Defendant's Motion and Memorandum to Plaintiff at his most recent address and ordered Plaintiff to file his response by July 30, 2021 (ECF No. 28).

On August 2, 2021, Plaintiff filed his "Response to the Defendant's Motion to Dismiss with Incorporated Memorandum in Support" (ECF No. 29).[7] Finally, on August 9, 2021, Defendant filed its Reply (ECF No. 30), accordingly, this matter is ripe for decision.

**Defendant's Argument in Support of Dismissal**

Defendant points out that this action is the fourth such action Plaintiff has filed against Defendant or its parent company in the last two years, and that the prior cases, which are identical to the one at bar, were also dismissed.[8] (ECF No. 24 at 1-2)

---

[7] Plaintiff also filed a "Notice of Application of Mailbox Rule" (ECF No. 29 at 10), representing that the attached response was placed in the outgoing mail at Denmar Correctional Center on or before July 29, 2021. The undersigned notes that the postmark is dated July 30, 2021 (Id. at 11), and finds that Plaintiff's response was timely filed.

[8] i.e., Field v. Altria Group, Inc., 2:19-cv-36 (N.D.W. Va. 2019) ("Field I"); Field v. Phillip Morris, USA, Inc., 2:20-cv-2 (N.D.W. Va. 2020) ("Field II").

Defendant argues that each of Plaintiff's claims fail as a matter of law: the negligence claim fails because nowhere does he identify what "ingredients" or "additives" were used or establish any causal link between these and his alleged injury (Id. at 4-5); the product design claim fails as a matter of law as he fails to identify any particular defect or any deficiencies in the packaging warning labels (Id. at 5-6); the failure to warn claim fails as a matter of law as it is nothing more than a legal conclusion without any supporting factual details (Id. at 6-7); the fraud-based claims are not supported by any particular circumstances of the alleged fraud required by this Circuit's jurisprudence and Rule 9(b) of the Federal Rules of Civil Procedure (Id. at 7-8); the breach of express warranty claim fails because Plaintiff fails to establish any facts supporting the existence of an express warranty, let alone a breach of same (Id. at 8); and the breach of implied warranty claim fails, as Plaintiff alleged no facts relevant to his implied warranty claim, however, West Virginia's implied warranty statute does not provide for a cause of action where the product's only function is to be smoked and the plaintiff admits he smoked it (Id. at 8-9).

Defendant further argues that Plaintiff's complaint appears to allege that Defendant should be held liable for manufacturing and selling cigarettes and for complying with the federal Labeling Act, which would render his claims preempted by federal law. (Id. at 9) To the extent Plaintiff's claims are solely based on the fact that cigarettes contain nicotine and can be addictive, numerous courts have found such claims are preempted. (Id. at 10) Further, since July 1, 1969, the Labeling Act preempts tort claims premised on state law duties to warn or provide information relating to smoking and health, thus to the extent Plaintiff has alleged Defendant failed to warn of the harmful nature of smoking, this claim is preempted. (Id. at 10-12)

Defendant asks this Court to dismiss Plaintiff's Complaint. (Id. at 12)

**Plaintiff's Response in Opposition**

Regarding his negligence claim, Plaintiff concedes he does not identify the specific ingredients or additives, however, Defendant is aware of them, and Plaintiff described them with enough factual detail in support of his claim. (ECF No. 29 at 3) The U.S. Supreme Court ordered that the public be made aware of which additives were used to increase the addictiveness of Defendant's products. (Id.)

Plaintiff contends that he met the requirements to properly allege a failure to warn claim, which is "further supported by the Order of the Supreme Court to properly warn the public of the use of these additives. The warning would have never been made if there was not a pre-existing failure to warn in the first place." (Id. at 4) Plaintiff states that he has properly alleged a claim grounded in fraud. (Id.) Plaintiff contends that his complaint states a products liability claim, and that he purchased and used Defendant's products, including "Marlboro (reds), Marlboro Mediums, Marlboro Lights, and USA Gold Lights" for approximately sixteen years. (Id. at 5) Plaintiff states he has alleged a design defect claim, and that it is his position that Defendant's products are not reasonably safe, despite Congress and courts finding a reasonable risk of health for tobacco products. (Id.) "[T]he Supreme Court would not have issued an order that the company make these additives known to the public if the Higher Court had not seen the additional harmfulness that these additives apply to the product." (Id.) Plaintiff also asserts that he has stated a claim for breach of express and implied warranties. (Id. at 6)

Plaintiff argues that his claims are not preempted by federal law, and appears to contend that the Supreme Court ordered that Defendant should have additional warnings on its products, because "[o]bviously the higher court felt that the Defendant did not abide by the federal Labeling

7

Act properly, or no order would have ever been made." (Id. at 7)

Plaintiff asks the Court to deny Defendant's motion to dismiss. (Id.)

### Defendant's Reply

Defendant reasserts its position that Plaintiff's Response to Defendant's Motion, fails to resolve the deficiencies in his allegations set forth in his Amended Complaint. (ECF No. 30)

### THE STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959.

This Court is required to liberally construe *pro se* documents, holding them to a less stringent standard than those drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (1978). Liberal construction, however, "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments

and most successful strategies for a party." Miller v. Jack, 2007 WL 2050409, at * 3 (N.D.W. Va. 2007) (citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978)). Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. Small v. Endicott, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir. 1990)). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); also see Goode v. Central Va. Legal Aide Society, Inc., 807 F.3d 619 (4th Cir. 2015).

**Discussion**

Motion to Remand:

As noted *supra*, Plaintiff filed a "Motion to Remand Back to the State Circuit Court" (ECF No. 18), asserting that this matter be remanded back to the Circuit Court of McDowell County of West Virginia because Plaintiff is a West Virginia resident and pursuant to the holding in Richardson, et al. v. Philip Morris Incorporated, et al., 950 F. Supp. 700 (D. Md. Jan. 7, 1997).[9] In response, Defendant argues that in addition to Plaintiff's misinterpretation of black letter law, diversity jurisdiction is met in this case, as Defendant is a Virginia corporation, which Plaintiff

---

[9] The undersigned agrees with Defendant that Plaintiff misunderstood the holding in Richardson, which is distinguishable from the case *sub judice*, particularly to the extent that there was not complete diversity jurisdiction.

admits, Plaintiff admits he is a West Virginia citizen, and the amount in controversy is $2,050,000, thus satisfying 28 U.S.C. §§ 1332, 1441, 1446(b). (ECF No. 22)

Title 28 U.S.C. § 1441(a) provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court . . . ." The removing party has the burden of establishing federal jurisdiction. Mulcahey v. Columbia Organic Chemicals Co., 29 F.3d 148, 151 (4th Cir. 1994). Additionally, removal jurisdiction is strictly construed and all doubt is resolved in favor of remand. Id. at 148. Title 28 U.S.C. § 1332 provides that the District Courts shall have original jurisdiction of all civil actions where the matter in controversy (1) exceeds the sum or value of $75,000, exclusive of interests or costs, and (2) is between citizens of different states. 28 U.S.C. § 1332(a)(1)[10]; see also Owen Equip., & Erection Co. v. Kroger, 437 U.S. 365, 373, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978) (diversity jurisdiction does not exist unless each defendant is a citizen of a different State from each plaintiff."); Wisconsin Dept. Of Corrections v. Schacht, 524 U.S. 381, 388, 118 S.Ct. 2047, 2052, 141 L.Ed.2d 364 (1998) ("A case falls within the federal district court's 'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, i.e., only if there is no plaintiff and no defendant who are citizens of the same State."). "The statute

---

[10] Title 28, U.S.C. §1332 specifically provides:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between -

 (1) citizens of different states;

 (2) citizens of a State and citizens or subjects of a foreign state;

 (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

 (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

establishing diversity jurisdiction is to be strictly construed and all doubts are to be resolved against federal jurisdiction." Frontier Energy Corp. v. Broda, 882 F. Supp. 82, 85 (N.D.W. Va. 1995). For purposes of diversity jurisdiction, an individual's citizenship has been equated to the place of domicile. See Linville v. Price, 572 F. Supp. 345 (S.D.W. Va. 1983).

Following review of Plaintiff's Amended Complaint, coupled with his admission of being a West Virginia resident and Defendant being a Virginia corporation, and given the significant amount in controversy, it is clear that diversity jurisdiction has been met in this case that confers original jurisdiction to this Court, accordingly, the undersigned respectfully recommends that Plaintiff's "Motion to Remand Back to the State Circuit Court" (ECF No. 18) be denied.

Motion to Dismiss:

After having liberally reviewed Plaintiff's Amended Complaint, it is clear that he has failed to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Indeed, in each of the enumerated counts Plaintiff alleges against Defendant, he only provides "naked assertion[s]" which are verboten pursuant to the jurisprudence espoused under Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Moreover, Plaintiff's claims, particularly those rooted in negligence and failure to warn, fail to comply with the general rules of pleading as set forth in Rule 8(a) of the Federal Rules of Civil Procedure. That Rule provides as follows:

> (a) Claim for Relief. A pleading that states a claim for relief must contain:
>
> > (1) a short and plain statement of the grounds for the Court's jurisdiction, unless the court already has jurisdiction and the claim needs no jurisdictional support;
> > (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
> > (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

11

Plaintiff's Amended Complaint does not describe any causal connection between Defendant's "negligence" and his alleged injuries, thus, does not comply with Rule 8(a) for failing to allege sufficient facts and circumstances showing entitlement to relief. Further, as pointed out by Defendant, Plaintiff's claims arising from misrepresentation or fraud also fail to comply with the heightened pleading requirements under Rule 9(b) – as with his other claims, these are simply conclusory statements. See United States ex rel. Bunk v. Gov't Logistics N.V., 842 F.3d 261, 275 (4th Cir. 2016) ("In simple terms, a plaintiff complies with Rule 9(b) by, 'at a minimum, describ[ing] the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.' "); Heslep v. Americans for African Adoption, Inc., 890 F. Supp. 2d 671, 683 (N.D.W. Va. 2012) ("The heightened pleading requirements for fraud claims prompt a careful inquiry into the plaintiffs' . . . allegations.").

Despite Plaintiff's succinct statements in his response to Defendant's motion that his Amended Complaint sufficiently alleges product liability claims, nowhere in his allegations does he adequately allege how Defendant's products contain design defects or fail to warn consumers of the dangers of its products as espoused by this Court. See Knight v. Boehringer Ingelheim Pharm., Inc., 323 F. Supp. 3d 809, 833 (S.D.W. Va. 2018). Plaintiff merely alleges that Defendant failed to inform consumers of "additives" and "ingredients" without specifying same, and that they cause consumers to become more addicted, leading to further use of its products. As an additional matter, the undersigned is at a loss to determine what "Order" the United States Supreme Court Plaintiff repeatedly refers to regarding Defendant's publication of the ingredients or additives used in its products; Plaintiff provides no reference or citation as to this particular allegation.

Moreover, Plaintiff's alleged breaches of both express and implied warranties are also

nothing more than conclusory statements without any supporting factual allegations. Nowhere in his Amended Complaint or in his response to Defendant's motion to dismiss does he identify the existence of any express warranty, let alone provide any factual support for same. See Bishoff v. Medtronic, Inc., 2010 WL 4852650, at *3 (N.D.W. Va. 2010). Indeed, from the undersigned's liberal construction of Plaintiff's Amended Complaint and supporting pleadings, it can be inferred that Plaintiff had smoked cigarettes manufactured by Defendant for about sixteen years, however, it also appears to the undersigned that Defendant's cigarette products were intended for that very purpose. See Wilson v. Brown & Williamson Tobacco Corp., 968 F. Supp. 296 (S.D.W. Va. 1997) (implied warranty claim dismissed that concerned loose-leaf tobacco rolled and smoked by plaintiff); see also, W. Va. Code § 46-2-315.

Regardless of these legal shortcomings, Plaintiff's claims are nevertheless preempted by federal law. Plaintiff has clearly asserted his claims are based on Defendant's failure to warn, "that the additives placed in the cigarettes that were manufactured and sold were the cause of the complaint." (ECF No. 29 at 7) When applying Cipollone v. Liggett Group, Inc., 505 U.S. 504 (1992) ("insofar as claims under either failure-to-warn theory require a showing that respondents' post–1969 advertising or promotions should have included additional, or more clearly stated, warnings, those claims are pre-empted") and the Labeling Act, 15 U.S.C. § 1334(b)[11], it is clear that Plaintiff's allegations concern post-1969 advertising or promotion which has been explicitly preempted by Congress.[12]

---

[11] The Act's express preemption provision provides: "No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter."

[12] As an additional matter, the undersigned notes Plaintiff's admission that he had been using Defendant's products for "approximately sixteen years" is significant, given that according to the West Virginia Division of Corrections and

## **PROPOSAL AND RECOMMENDATION**

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** ***Defendant Philip Morris USA Inc.'s Motion to Dismiss Plaintiff's Amended Complaint*** (ECF No. 23), as well as Defendant's initial motion to dismiss (ECF No. 5). As a result of the recommendation for dismissal, the undersigned would further **RECOMMEND** that Plaintiff's ***Motion to Remand Back to the State Circuit Court*** (ECF No. 18) be **DENIED** as **MOOT**.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

---

Rehabilitation website indicates that Plaintiff's date of birth is December 20, 1979. See - OIS Search (wv.gov). Obviously, Plaintiff's claims post-date the 1969 prohibitions set forth by the Labeling Act as interpreted by the United States Supreme Court. To that extent, Plaintiff's claims would also be time-barred pursuant to W. Va. Code § 55-2-12(b) ("Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.")

Although the statute of limitation period is borrowed from State law, the question of when a cause of action accrues is answered according to federal law. See Brooks v. City of Winston-Salem, NC, 85 F.3d 178, 181 (4th Cir. 1996). Under federal law, a cause of action accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Nasim v. Warden, MD House of Corr., 64 F.3d 951, 955 (4th Cir. 1995) (*en banc*), cert. denied, 516 U.S. 1177, 116 S.Ct. 1273, 134 L.Ed.2d 219 (1996) (citing United States v. Kubrick, 444 U.S. 111, 122-24, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979)). "Accrual of a claim does not 'await awareness by the plaintiff that his injury was negligently inflicted.' " Nasim, 64 F.3d at 955 (quoting Childers Oil Co., Inc. v. Exxon Corp., 960 F.2d 1265, 1272 (4th Cir. 1992)).

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on any opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to the *pro se* Plaintiff and to counsel of record.

ENTER: August 10, 2021.



Omar J. Aboulhosn
United States Magistrate Judge